UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHENCO ENGINEERING & CONSULTING GMBH, | Case No. 2:24-cv-00632-AKB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| DO-FLUORIDE NEW MATERIALS CO. LTD.; DO-FLUORIDE NEWENERGY TECHNOLOGY CO. LTD.; LILINGYUN (A/K/A MICHELLE LI); and LI YUNFENG, | |
| Defendants. | |

Pending before the Court is Plaintiff Chenco Engineering & Consulting GmbH's Motion to Remand (Dkt. 24) and Defendant Do-Fluoride New Materials Co. LTD.'s Motion for Leave of Court to File Sur-Reply in Opposition to Plaintiff's Motion to Remand (Dkt. 34). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motions on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed below, the Court grants Plaintiff Chenco's motion to remand and denies Defendant Do-Fluoride New Materials' motion for leave to file a surreply.

**MEMORANDUM DECISION AND ORDER - 1**

# I.  BACKGROUND

## A.  Factual Background

This case arises out of an action in state court. Plaintiff Chenco Engineering & Consulting GmbH ("Chenco") is a German chemical engineering company, organized under the laws of Germany, and with a registered office in Regensburg, Germany (Dkt. 11-14 at ¶ 1). Chenco specializes in "developing and licensing technology for fluorine-based chemical production facilities" (*id.* at ¶ 9). Defendant Do-Fluoride New Materials Co., Ltd. ("New Materials") is a Chinese corporation, organized under the laws of China, with its principal place of business in Jiaozuo, Henan Province, China (*id.* at ¶ 2).[1] Defendant Do-Fluoride New Energy ("New Energy") is also a Chinese corporation, organized under the laws of China, with its principal place of business in Jiaozuo, Henan Province, China (*id.* at ¶ 3). Defendants Li Yunfeng and his sister, Li Lingyun (a/k/a Michelle Li) (hereinafter, the "Li Siblings"), are both Chinese nationals (*id.* ¶¶ 4, 5). Chenco alleges that Li Yunfeng is the legal representative of New Materials, that both Li Siblings have ties to New Materials and/or New Energy, and both Li Siblings exercise some level of control over New Materials and/or New Energy's assets (*id.* at ¶ 5; Dkt. 24-1 at 5).

Chenco's state complaint alleges the following: On December 11, 2005, Chenco and New Materials entered a contract to set up an aluminum fluoride production plant using Chenco's

---

[1]    Chenco alleges that in 2021, New Materials' name was changed from Do-Fluoride Chemicals Co., Ltd. to Do-Fluoride New Materials Co., Ltd. (Dkt. 11-14 at ¶ 2). In the interest of consistency and avoiding confusion, the Court will refer to both Do-Fluoride Chemicals Co., Ltd. (which Chenco alleges is the entity's pre-2021 name) and Do-Fluoride New Materials Co., Ltd. (which Chenco alleges is the entity's post-2021 name) as "New Materials." The Court's use of this naming convention does not constitute an adjudication on any alter-ego claim.

proprietary technology (Dkt. 11-14 at ¶ 12). After establishing the factory, New Materials misappropriated Chenco's proprietary technology and built four additional plants without compensating Chenco, in violation of the parties' contract (*id.* at ¶ 13). The parties engaged in arbitration before the International Chamber of Commerce arbitral tribunal ("ICC Panel") in Zurich, Switzerland (*id.* at ¶¶ 14-17). On May 15, 2013, the ICC Panel issued its Final Award ("Arbitration Award"), which awarded damages to Chenco for New Materials' unauthorized use of Chenco's technology, among other penalties, fees, and costs (*id.* at ¶ 20).

New Energy and New Materials attest that on May 26, 2015, Chenco applied for recognition and enforcement of the Arbitration Award in the Xinxiang Intermediate People's Court of Henan Province (the "Xinxiang Judgment"), but Chenco received an unfavorable decision (Dkt. 30 at 3; Dkt. 32 at 3). Chenco submits that in 2018, it applied to recognize the Arbitration Award in the United Kingdom (Dkt. 11-14 at ¶ 22). On June 22, 2020, the U.K. High Court entered an order in Chenco's favor and ordered additional payments for Chenco (the "U.K. Judgments") (*id.* at ¶¶ 21-25). Chenco alleges that New Materials appeared in the proceedings, did not request to set aside the U.K. Judgments, and did not appeal the U.K. Judgments (*id.* at ¶¶ 22, 28).

Since obtaining the U.K. Judgments, Chenco alleges that New Materials has evaded payment and continues to accrue additional costs, which as of October 16, 2023, total $11,249,540.20 (*id.* at ¶ 32; Dkt. 24-1 at 4). Chenco filed its first complaint in state district court on September 18, 2023 (Dkt. 2-2) (citing case number CV28-23-5986). Chenco's state action sought to enforce and collect on the U.K. Judgments under Idaho's Uniform Foreign Country Money Judgments Recognition Act (Dkt. 11-14 at ¶¶ 59-66) (citing Idaho Code §§ 10-1401, *et seq.*). Chenco alleges New Materials and New Energy have assets in Idaho, including liquid funds

MEMORANDUM DECISION AND ORDER - 3

currently held by Idaho-based Kore Power, Inc., which is controlled by Li Lingyun and is 14 percent owned by New Materials (Dkt. 11-14 at ¶¶ 4 ("Defendant Li Lingyun . . . [is] a director of Idaho-based Kore Power, Inc."), 40, 71). Chenco asserts that Kore Power has raised at least $75 million from investors and received a conditional loan commitment from the U.S. Department of Energy for $850 million; New Materials and/or New Energy had received $45 million from Kore Power in the first half of 2023; and when Chenco sought to enforce the U.K. Judgments in Idaho, Kore Power's payments to New Materials and/or New Energy ceased (*id.* at ¶¶ 41, 71).

Chenco also moved for injunctive relief in state court to prevent New Materials and New Energy from removing, authorizing, or directing the transfer of assets out of Idaho (*id.* at ¶¶ 67-72). Chenco attests that as litigation continued, it became aware of the "intertwined finances" between New Materials and New Energy (Dkt. 24-1 at 5). Chenco eventually filed an amended complaint that sought a declaratory judgment under Idaho Code § 10-1201 that New Materials and New Energy are alter egos and that the debts of New Materials may be collected from New Energy (Dkt. 11-14 at ¶¶ 73-76). Chenco also added claims for tortious interference and civil conspiracy against the Li Siblings, who (according to Chenco) moved assets amongst New Materials, New Energy, and Kore Power after Chenco filed the instant case (Dkt. 11-14 at ¶¶ 77-84; Dkt. 24-1 at 5).

This case had been pending for about fifteen months in state court before New Materials and New Energy sought removal. Chenco filed its initial complaint on September 18, 2023 (Dkt. 6-2). New Energy responded by filing a motion to dismiss Chenco's state complaint (Dkt. 7-6) and then filed an amended motion to dismiss and motion for summary judgment (Dkt. 9-12). The state district court denied New Energy's motions to dismiss and deferred ruling on its motion for

summary judgment (Dkt. 11-13). New Energy applied for permission to seek an interlocutory appeal from the state district court's denial of its motions to dismiss (Dkt. 11-18), and the state district court denied permission (Dkt. 12-2). New Energy then applied to appeal directly to the Idaho Supreme Court (Dkt. 12-4; Dkt. 12-5), and the Court denied that request (Dkt. 13-1).

On July 24, 2024, New Energy filed a second motion for summary judgment (Dkt. 14-7; Dkt. 14-8). It argued, among other issues, that the U.K. Judgments conflict with the Xinxiang Judgment and cannot be recognized under state law; Chenco did not file its claims within the applicable statute of limitations; Chenco's alter-ego claim is "derivative"; the U.K. Judgments should not be recognized because New Energy was not afforded due process; and adequate alternative forums exists (including China, the U.K., and Switzerland) (Dkt. 14-7).

The state district court denied New Energy's summary judgment motion in its entirety (Dkt. 15-23). New Energy again applied for permission to seek an interlocutory appeal to the Idaho Supreme Court (Dkt. 15-25), which the state district court again denied (Dkt. 15-40 at 9-12) ("New Energy's argument that it is not the party resisting the recognition of the U.K. Judgment is without merit . . . . This Court does not find that an appeal, which would delay the already beleaguered discovery process in this matter, materially advance[s] the orderly resolution of the litigation. Lastly, the Court finds New Energy's argument that this permissive appeal will not cause delay in this litigation to be unpersuasive and based upon incorrect factual representations."). Again, New Energy sought to appeal directly to the Idaho Supreme Court (Dkt. 15-42), which the Supreme Court denied (Dkt. 15-51).

In November 2024, the state district court granted Chenco's motion for alternative service on the Li Siblings, who had yet to appear in the case (Dkt. 15-48). Specifically, the state district

court authorized Chenco to complete service by publication (*id.*). Up until December 2024, Chenco and New Materials engaged in a series of contentious discovery disputes (*see, e.g.*, Dkt. 15-45 at 5) (summarizing Chenco's description of New Energy's counsel's remarks to opposing counsel, including "tough shit" and "way to go hot shot," before abruptly ending a discovery call). Following the most recent motions practice on discovery, the state district court ordered the parties to meet and confer before Chenco sought its fourth motion to compel, though the court acknowledged New Energy's apparent lack of good faith in cooperating with discovery (*id.* at 10) ("[T]he court finds that New Energy's previous history of delaying responses to discovery, coupled with New Energy's insistence of a detailed letter identifying the specific disputed discovery *after* the meet and confer, is also not indicative of good faith."). Chenco represents that it continued to attempt to meet and confer with New Energy's counsel, though New Energy's counsel said he would not be available in December (Dkt. 24-1 at 7).

## B.    Procedural Background

On December 30, 2024, New Energy filed its first notice of removal to this Court (Dkt. 1). New Energy's notice relied upon diversity jurisdiction as its basis for removal (*id.* at ¶ 5). Chenco's counsel represents that it communicated to New Energy that this Court lacks diversity jurisdiction because all parties are foreign entities or individuals (Dkt. 24-1 at 2). Given the issues with establishing diversity jurisdiction, Chenco requested the parties stipulate to a remand back to the state district court (*id.*). New Energy's counsel (also appearing on behalf of the Li Siblings) filed a motion to dismiss the Li Siblings for lack of personal jurisdiction (Dkt. 17). Shortly after, New Energy filed an amended notice of removal (Dkt. 18). New Energy's amended notice alleges the action is removable under 9 U.S.C. §§ 203 and 205 because the action "relates to an arbitration

agreement or award falling under the [New York] Convention" and that it is removable under 28 U.S.C. § 1603 because New Energy "is an agency or instrumentality of a foreign government with immunity" (Dkt. 18 at 3). Thereafter, New Materials filed its own notice of removal based on §§ 203 and 205 (Dkt. 20).

Chenco filed a motion requesting that the Court stay the briefing deadlines for the Li Siblings' motion to dismiss because the Court should first address whether it has subject matter jurisdiction to hear this case (Dkt. 22 at 3). Chenco represented that it would timely file a motion to remand based on lack of subject matter jurisdiction (*id.*). The Court granted Chenco's motion to stay the deadlines pending the Court's decision on Chenco's forthcoming motion to remand (Dkt. 23). Shortly after, Chenco filed its motion to remand (Dkt. 24). New Energy and New Materials responded with separate briefs in opposition to Chenco's motion to remand (Dkt. 30; Dkt. 32). Roughly a month after Chenco submitted its reply in support of its motion to remand (Dkt. 31), New Materials filed a motion for leave to file a surreply so it could address "legal misstatements and omissions" in Chenco's reply (Dkt. 34 at 1).

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters the Constitution and Congress have authorized. *Kokkonen v. Guardian Life Ins. Co. v. Am.*, 511 U.S. 375, 377 (1994). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. 1441(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28

U.S.C. § 1447(c). Given the "strong presumption" against removal jurisdiction, a defendant "always has the burden of establishing that removal is proper." *Mullis v. J.P. Morgan Chase & Co.*, No. 3:24-CV-01334-JES-MSB, 2024 WL 5004528, at *2 (S.D. Cal. Dec. 5, 2024) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

The Federal Arbitration Act ("FAA"), codified under title 9 of the U.S. Code, governs arbitration-related litigation in federal court. *Padilla Ayala v. Teledyne Def. Elecs.*, 533 F. Supp. 3d 920, 923 (C.D. Cal. 2021). Following the United States' accession to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"), Congress adopted what is now Chapter 2 under title 9. *See* 9 U.S.C. § 201, *et seq.*; *id.* (internal citations omitted). Section 205 provides federal courts with removal jurisdiction "[w]here the subject matter of an action or proceeding pending in a State court *relates to an arbitration agreement or award* falling under the Convention . . . ." 9 U.S.C. § 205 (emphasis added). Federal courts interpreting the phrase "relates to" have assigned it a "plainly broad" meaning. *Infuturia Glob. Ltd. v. Sequus Pharms.*, Inc., 631 F.3d 1133, 1138 (9th Cir. 2011). Specifically, an action "relates to" an arbitral agreement or award under the Convention when the agreement or award "could conceivably affect the outcome of the plaintiff's case." *Id.* (quoting *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002)).

The removing party "bear[s] the burden of establishing federal jurisdiction" under § 205. *Mullis*, 2024 WL 5004528, at *2 (quoting *Freaner v. Valle*, No. 11CV1819, 2011 WL 5596919, at *2 (S.D. Cal. Nov. 17, 2011)). A district court may exercise its discretion in considering whether the removing party has met this burden or if it lacks jurisdiction to hear the case. *See Totalenergies Renewables USA, LLC v. Trina Solar (U.S.), Inc.,* No. 22-16763, 2023 WL 8821328, at *1 (9th

Cir. Dec. 21, 2023) ("Because its analysis hinged on whether an arbitration agreement related to the dispute for the purpose of 9 U.S.C. § 205, the district court's order can be colorably characterized as a remand for lack of subject matter jurisdiction under 28 U.S.C. § 1447(c) . . . . Section 1447(d) precludes our review. . . . The FAA alone does not provide sufficient grounds here for appellate jurisdiction since '[t]he procedure for removal of causes otherwise provided by law shall apply' [under § 205].").

## III.    ANALYSIS

### C.    Defendant Do-Flouride New Materials' Motion for Leave to File Surreply

As a preliminary matter, the Court addresses New Materials' motion for leave to file a surreply in opposition to Chenco's remand motion. New Materials asks the court for permission to file a surreply to "address new legal misstatements and omissions" in Chenco's briefing on the pending motion for remand (Dkt. 34 at 1). While the Court did not discover any misstatements from Chenco's counsel, the Court has found New Materials' motion contains at least five case quotations that do not exist. Specifically, New Materials provides purported direct quotes from the following cases:

(1) Quoting *Jones Day v. Orrick, Herrington & Sutcliffe LLP*, 42 F.4th 1131, 1138 (9th Cir. 2022), as stating "a case need only relate to an arbitration agreement in the broadest sense" to be removable under § 205 (Dkt. 34 at 7). This quoted phrase appears nowhere in the case.

(2) Quoting *Jones Day*, 42 F.4th at 1138 as stating if a Convention award "does not appear on the face of the complaint," the presence of a "colorable defense relating to the award" is enough to keep it in federal court (Dkt. 34 at 11). These quoted phrases appear nowhere in the case.

(3) Quoting *C.B.F. Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017) as stating "recognition of a foreign arbitral award and recognition of a

foreign judgment enforcing that award are not mutually exclusive categories." (Dkt. 34 at 8). This quoted phrase appears nowhere in the case.

(4) Quoting *National Aluminum Co., Ltd. v. Peak Chemical Corporation, Inc.*, 132 F. Supp. 3d 990, 997 (N.D. Ill. 2015) as stating state law judgment recognition statutes "do not override the provisions of the New York Convention or the FAA when those federal laws govern the underlying dispute." (Dkt. 34 at 8). This quoted phrase appears nowhere in the case.

(5) Quoting *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1338-39 (9th Cir. 2011) as stating "[r]emoval is proper even if the arbitration clause or award is raised in the defense, rather than the complaint" (Dkt. 34 at 9). This quoted phrase appears nowhere in the case.

New Materials' brief also contains several other citation errors (*see, e.g.*, Dkt. 34 at 10) (citing *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 19-20 (D.D.C. 2011), for the proposition that courts recognize the importance of the three-year statute of limitations period under 9 U.S.C. § 207, despite that the case does not address the statute of limitations).

Counsel should take seriously its obligation to provide the Court with an accurate description of the law. *See, e.g.*, *United States v. Hayes*, 763 F. Supp. 3d 1054 (E.D. Cal. 2025) (levying $1,500 in monetary sanctions against counsel personally for fictitious cases and quotations that the court suspected were produced using artificial intelligence), *reconsideration denied*, No. 2:24-CR-0280-DJC, 2025 WL 1067323 (E.D. Cal. Apr. 9, 2025); *Grant v. City of Long Beach*, 96 F.4th 1255 (9th Cir. 2024) (striking an appellant's brief and dismissing an appeal for materially misrepresenting or fabricating case citations). After New Materials freely accused opposing counsel of misstating the law, New Materials' submission of non-existent quotes is troubling (Dkt. 30 at 5 ("Chenco's argument for remand collapses under the weight of its own misreading of the law"); *id.* at 7 ("Chenco fundamentally misrepresents the applicable removal

MEMORANDUM DECISION AND ORDER - 10

standard"); Dkt. 34 at 1 ("The proposed sur-reply . . . is necessary to address new legal misstatements . . . ."); *id.* at 2-3 ("Chenco's failure to address this standard . . . misstates controlling law and warrants correction.")). Accordingly, the Court reminds counsel of their duties to act according to the Idaho Rules of Professional Conduct.[2]

Turning to the merits, the Court finds New Materials' surreply arguments are unpersuasive. Surreplies are "highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Sims v. Paramount Gold & Silver Corp.*, No. CV 10-356-PHX-MHM, 2010 WL 5364783, at *8 (D. Ariz. Dec. 21, 2010) (quoting *In re Enron Corp. Sec.*, 465 F. Supp. 2d 687, 690 n.4 (S.D. Tex. 2006)). The moving party should identify in his motion the new arguments he alleges the opposing party raises and why the arguments justify granting leave to file a surreply. *Edwards v. Mondora*, 700 F. App'x 661, 664 (9th Cir. 2017). Here, New Materials neither identifies the 'new arguments' from Chenco that warrant a surreply nor identifies a genuine misstatement by Chenco (Dkt. 34). Rather, New Materials summarizes its understanding of the § 205 removal standard, how New Materials' defenses justify removal, and attempts to "clarify the federal nature of Chenco's claim" (*id.* at 3). Even if the Court were to grant leave to file a surreply, these arguments are either summaries or variations of arguments raised in New Materials'

---

[2]    Under Rule 3.3 of the Idaho Rules of Professional Conduct, an attorney shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." The rules do not require an "impartial exposition" of the law, and the judiciary expects attorneys to advocate zealously on behalf of their clients, even if that entails interpreting the law in novel ways. Idaho R. of Prof'l Conduct 3.3 cmt. 2; Idaho L. R. Civ. 83.8 ("lawyers have an obligation to represent clients zealously"). Still, an attorney has a responsibility to engage in a manner that does not bring their profession into disrepute, such as misstating the law.

principal response brief, which the Court has already considered. As the Court explains below, those arguments do not justify removal. Accordingly, the Court denies New Materials' motion for leave to file a surreply.

**D.    Chenco's Motion to Remand**

**1.    Removal Jurisdiction Under § 205**

Chenco moves to remand this case under 28 U.S.C. § 1447 because the Court lacks removal jurisdiction over this case (Dkt. 24). In responding to Chenco's motion, New Energy has withdrawn its earlier argument that it may remove under 28 U.S.C. §§ 1330 and 1603 because New Energy is an "instrumentality of a foreign state" (Dkt. 32 at 14-15) ("New Energy is not arguing removal based on 28 U.S.C. §§ 1330 and 1603 in response to the motion to remand"). As a result, the parties' outstanding disagreement concerns removal under 9 U.S.C. § 205. Section 205 provides that a defendant may remove an action previously filed in state court if "the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205; *see Cerner Middle E. Ltd. v. Balbadi Enters. LLC*, 939 F.3d 1009, 1014 (9th Cir. 2019).

New Materials and New Energy submit parallel briefing opposing Chenco's motion to remand (Dkt. 30; Dkt. 32). Given the complexity of this case and the parties' overlapping arguments, the Court organizes these arguments into five categories: (1) whether the case "relates to" an arbitration agreement or award under the Convention; (2) distinctions between arbitral awards and foreign judgments for purposes of removal under § 205; (3) a defendant's ability to remove under § 205 based on a defense; (4) the degree to which a court must "strictly" or "broadly" construe the § 205 removal statute; (5) federalism concerns; and (6) waiver of removal under

§ 205. The Court addresses these issues below and concludes that remand is proper because the Defendants have not met their burden of showing the Court has removal jurisdiction under § 205.

> a.    **Whether the State District Court Action "Relates to an Arbitration Agreement or Award" falling Under the New York Convention**

Section 205, Title 9 of the U.S. Code provides federal courts with removal jurisdiction "[w]here the subject matter of an action or proceeding pending in a State court *relates to* an arbitration agreement or award falling under the Convention . . . ." (emphasis added). The statute's key phrase is "*relates to*," which courts have found to be "plainly broad." *Infuturia*, 631 F.3d at 1137 (explaining the "critical phrase" in the statute is "relates to"). An action "relates to" an arbitration agreement or award if it "could conceivably affect the outcome of the plaintiff's case." *Id.* at 1138 (citing *Beiser*, 284 F.3d at 669). "The 'relates to' and 'conceivably affect' standard may be broad, but it is not limitless." *Cerner*, 939 F.3d at 1016. Where "no close reading of the arbitration agreement or award is required," removal under § 205 is improper. *Samsun Logix Corp. v. Bank of China*, 740 F. Supp. 2d 484, 489 (S.D.N.Y. 2010) ("The incantation of the word 'arbitration' somewhere in the record of a case does not convey federal jurisdiction."). "The possibility that some discussion in the Award might conceivably be perceived as persuasive—just as a law review article might be persuasive—cannot be enough by itself." *Cerner*, 939 F.3d at 1016.

New Energy argues that this action "relates to" an arbitration agreement or award and that "Chenco intentionally does not apprise the Court of other proceedings and facts" that support this point (Dkt. 32 at 6). New Energy explains that in 2017, the Xinxiang Intermediate People's Court of Henan Province issued the Xinxiang Judgment (*id.*). According to New Energy, Chenco was

unhappy with the result, began "forum shopping," and obtained the U.K. Judgments (*id.*). New Energy questions the validity of the U.K. Judgments, calling them a "Secondary Judgment," and submits it "require[s] litigation that relates to the underlying Arbitration Agreement and Award" (*id.* at 7-8). New Energy does not elaborate on how this "Secondary Judgment" argument invokes the underlying Arbitration Agreement and Award, or how it "relates to" an arbitral award under the Convention.

Similarly, New Materials argues the U.K. Judgments "implicate[] the Agreement/Award and require[] judicial interpretation of the Convention's enforcement provisions" (Dkt. 30 at 9). New Materials asserts that Chenco violated the Convention by seeking the U.K. Judgments, which are from a "secondary jurisdiction" (*id.* at 2). Like New Materials, New Energy broadly references the "secondary jurisdiction" of the U.K. Judgments without identifying the specific conflict with the Convention's enforcement provisions or submitting any authority that suggests a conflict exists (*see, e.g.*, *id.*) (describing secondary jurisdiction judgments as "uniquely localized" and unable to be enforced globally without invoking any specific term of the Convention, the arbitration award or agreement, or other state or federal authority).

Under the "relates to" text in § 205, the dispositive inquiry is whether the Arbitration Agreement or Award could conceivably affect the outcome of the case (Dkt. 33 at 2). Here, Chenco is seeking to enforce the U.K. Judgments under Idaho law, not under the Convention or the terms of the Arbitration Award. Neither Defendant explains how an alleged conflict between the Xinxiang Judgment and the U.K. Judgments invokes a specific term of the Convention, or how the Arbitration Award or Agreement bears on any conflict with the U.K. Judgments. Likewise, neither Defendant cites authority explaining how questions of "secondary" jurisdiction bear on the Court's

removal authority under § 205. Additionally, to the degree either Defendant suggests the U.K. Judgments are questionable, Chenco responds "DFD affirmatively consented to the jurisdiction of the U.K. Court to render the [U.K. Judgments]" (*id.* at 3). At the core of this action, the parties disagree over the U.K. Judgments, which Chenco seeks to enforce under Idaho law. Accordingly, the Court does not find Defendant's arguments met their burden of showing the instant case relates to an arbitral award or agreement under the Convention.

> **b.      "Foreign Judgments" Versus "Arbitral Awards"**

Generally, the recognition of foreign judgments is an issue of state law. Restatement (Third) of the Foreign Relations Law of the United States § 481 cmt. a. (1987) ("[R]ecognition and enforcement of foreign country judgments is a matter of State law, and an action to enforce a foreign country judgment is not an action arising under the laws of the United States. Thus, State courts, and federal courts applying State law, recognize and enforce foreign country judgments without reference to federal rules."); *see also Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 615 n.12 (9th Cir. 2017) (explaining state law controls the recognition of foreign judgments in federal diversity cases).

Federal courts have recognized the "conceptual difference" between foreign court judgments and arbitral awards. *Commissions Import Export S.A. v. Republic of the Congo*, 757 F.3d 321, 330 (D.C. Cir. 2014) ("State courts have long recognized the conceptual difference between arbitral awards and foreign court judgments on arbitral awards . . . and treated foreign court judgments on awards as enforceable under state law.") (internal citations omitted); *see also Amaplat Mauritius, Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp. 3d 11, 32 (D.D.C. 2023)

("Plaintiffs have brought an action under the D.C. Judgments Recognition Act to recognize and enforce the Zambian judgment, which itself confirms the underlying arbitral award.").

Courts have further distinguished foreign court judgments from arbitral awards in the context of the FAA and the Convention. For example, the Court of Appeals for the D.C. Circuit recognized that foreign judgments are not subject to the limitations of the Convention, such as the Convention's three-year limitations period. *Commissions Import Export*, 757 F.3d at 328. The Second Circuit also distinguished between arbitral awards and foreign judgments when it concluded the FAA did not preempt state laws on recognizing foreign judgments. *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1319 (2d Cir. 1973) ("It is not insignificant that the Federal Arbitration Act itself makes a very clear distinction between action on an award and action on a judgment enforcing the award . . . . We hold, then, that . . . New York state law is not preempted to the extent that it permits, regulates and establishes a procedure for the enforcement of the foreign money judgment.").

Chenco relies on *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 582 (2d Cir. 1993), to argue that there is a distinction between foreign judgments based on arbitral awards and the independent recognition of arbitral awards (Dkt. 33 at 5) (citing *Seetransport*). The Second Circuit in *Seetransport* provided "unlike the recognition of arbitral awards, which is governed by federal law, the recognition of foreign judgments is governed by state law." 989 F.2d at 582. Chenco explains that under Idaho law, once a foreign judgment is recognized, "it is enforceable in the forum state in accordance with the procedures for enforcement in the forum state and to the same extent that a judgment of the forum state would be enforceable." (Dkt. 33 at 5) (citing I.C. § 10-

MEMORANDUM DECISION AND ORDER - 16

1407, cmt. ¶ 3). Chenco emphasizes that its Second Amended Complaint is based solely on Idaho state law (*id.*). To the extent either party suggests Chenco was obligated to seek confirmation of the U.K. Judgments in Switzerland, Chenco asserts this is contrary to established law (Dkt. 33 at 5) (citing *C.B.F. Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 79 (2d Cir. 2017)) ("For the foregoing reasons, we hold that the district court erred in dismissing appellants' Enforcement Action because: (1) appellants are not required to bring an action to confirm their foreign arbitral award before they can seek to enforce it . . . .").

New Energy does not address Chenco's distinction between foreign judgments and arbitral awards. Separately, New Materials claims Chenco's distinction between "judgment" and "arbitration award[s]" is "an appeal to semantics" (Dkt. 30 at 12). Throughout its briefing, New Materials argues the U.K. Judgments are "intertwined with the arbitration agreement, arbitral award, and the treaty framework" (*see, e.g., id.*). As support, New Materials cites *AMCI Holdings, Inc.*, 850 F.3d at 71, to argue "recognition of a foreign judgment confirming an arbitration award remains subject to the FAA and the New York Convention" (Dkt. 30 at 12).[3]

No party here is seeking confirmation of the Arbitration Award in Idaho state district court; Chenco is only seeking recognition and enforcement of the U.K. Judgments. To the extent New Energy represents the state action implicates an arbitral award and not a foreign judgment, this

---

[3]     The Second Circuit in *AMCI Holdings, Inc.*, addressed whether under the Convention "appellants were required to confirm their foreign arbitral award before they would be allowed to enforce it." 850 F.3d at 74. The Second Circuit found that appellants were not required to first confirm their arbitral award before enforcing it. *Id.* The court did not address the issue of foreign judgments or suggest that the FAA or Convention preempts state law regarding the enforcement of foreign judgments.

conflicts with New Energy's own representations in state court (*see, e.g.*, Dkt. 14-7 at 2 (New Energy argues "Chenco's claims against New Energy all arise from its request to have the Court recognize a Foreign Country Money Judgment it claims to have."); Dkt. 15-43 at 3 (New Energy describing the main legal issue as "whether a foreign judgment should be recognized under I.C. § 10-1404 where there is undisputed evidence showing conflicting judgment amounts issued by multiple foreign courts.")).

Relatedly, New Materials suggests Chenco's "foreign judgement" characterization is only an attempt to avoid the three-year statute of limitations for arbitral actions under the FAA (Dkt. 30 at 4) ("By structuring its claim as an enforcement action for a foreign judgment rather than an arbitral award, Chenco avoided directly addressing the FAA's three-year statute of limitations."). New Materials provides no authority suggesting that Chenco's action is not actually a foreign judgment action; the FAA's three-year statute of limitations should apply to a foreign judgment; or the FAA preempts Idaho state law regarding foreign judgments. The Court is unaware of any instance where a federal court has found the FAA preempts state law on enforcing foreign judgments, including the imposition of the FAA's three-year statute of limitations. *See Island Territory of Curacao*, 489 F.2d at 1319 (explaining "the Convention on Recognition itself and its enforcing legislation go only to the enforcement of a foreign arbitral award and not to the enforcement of foreign judgments confirming foreign arbitral awards," so the FAA did not preempt state law). Accordingly, the Court finds the instant action concerns a foreign judgment, not an arbitral award under the Convention.

c.    **Defenses as a Basis for Removal Under § 205**

Unlike the general removal statute, a colorable affirmative defense that could be "conceivably affect[ed]" by the arbitral award or agreement may justify removal under § 205. *Infuturia*, 631 F.3d at 1138-39 ("[W]here the defendant relies on the affirmative defense of collateral estoppel regarding issues already resolved against the plaintiff in arbitration, the arbitral award 'could conceivably affect the outcome' of the case.") (internal citations omitted).

New Energy provides three main defenses that it believes implicate the Convention: (1) Chenco's alter-ego claim is a "derivative claim"; (2) as a result of the "derivative" alter-ego claim, New Energy is "entitled to raise statute of limitation defenses and laches" related to the Arbitration Agreement and Award; and (3) Chenco is "attempt[ing] to expand the [arbitral] award to add a debtor," which deprives New Energy of "due process and its rights under the Convention" (Dkt. 32 at 9-10). Chenco rebuts New Energy's arguments by asserting New Energy has already raised these arguments in state court, which the state district court and/or the Idaho Supreme Court rejected (Dkt. 33 at 8).

Having reviewed the state court record, the Court acknowledges that New Energy previously raised identical defenses to those it reasserts before this Court. The state district court rejected New Energy's argument that an alter-ego claim may be brought as an independent claim and not as a derivative claim attached to another claim (Dkt. 12-2 at 7) ("New Energy's argument that there is no authority under I.C. § 10-1406 for Chenco to assert alter-ego as an independent claim following entry of its foreign money judgment is unpersuasive."). The state district court also declined New Energy's statute of limitations argument and explained that the applicable statute of limitations is six years (Dkt. 15-23 at 5 n.1, 17). Finally, the state district court rejected

New Energy's due process argument (*id.* at 18) (finding "no merit in New Energy's argument that it was not afforded due process because it received no notice of the Swiss Arbitration or the following enforcement actions on the judgments stemming from the arbitration award," and that "New Energy, as it has asserted throughout this litigation, was not a party to the contract between New Materials and Chenco, nor a party to the resulting arbitration. Unless New Energy now concedes that it has a unity of interest with New Materials, New Energy was not entitled to due process protections in the underlying arbitration proceedings."). Notwithstanding the state district court's rulings, New Energy cites no authority as to how the "derivative" nature of Chenco's alter-ego claim bears on Chenco's motion to remand, or why a shorter statute of limitations applies to Chenco's alter-ego claims.

New Materials argues that it has asserted federal defenses under the FAA and the Convention that "directly relate to the arbitration agreement and the award," and that these defenses "go to the heart of the arbitration Agreement and Award, raise significant federal questions under the United States Treaty, and place this case squarely within the FAA's jurisdictional framework" (Dkt. 30 at 9). Specifically, New Materials argues that (1) Chenco seeks to enforce a secondary jurisdiction recognition judgment as if it were a globally enforceable primary confirmation judgment; (2) Chenco attempts to impose an alter-ego liability on a non-signatory to the arbitration agreement; and (3) Chenco's action violates the three-year statute of limitations on arbitral awards (*id.* at 9, 12).

While the Court need not adjudicate the parties' defenses to determine whether removal under § 205 is proper, the Defendants must still submit a defense that "could conceivably affect the outcome of the plaintiff's case." *Infuturia*, 631 F.3d at 1139. Here, Chenco is asking an Idaho

state district court to recognize and enforce a foreign judgment that recognizes an arbitral award. It is unclear how New Materials' arguments regarding primary and secondary jurisdictions could affect the outcome of this case; the U.K. Judgments recognizing the Arbitration Award are enforceable in Idaho under Idaho state law, whether or not the U.K. is a secondary jurisdiction under the arbitral agreement. Under Idaho law, once a foreign judgment is recognized, it is enforceable to the same extent as an Idaho judgment, including against a judgment debtor's alter ego. *See* I.C. § 10-1407. While New Materials repeatedly describes Chenco's action as an attempt to skirt the three-year statute of limitations under the FAA, it cites no authority to suggest a three-year limit applies to Chenco's action to enforce the U.K. Judgments. It also submits no authority that the FAA or Convention preempts Idaho law regarding recognition of foreign judgments. Accordingly, the Court finds the Defendants' asserted defenses are insufficient grounds to remove under § 205.

### d.    'Strict' Versus 'Broad' Construction of § 205 Removal Statute

Generally, removal is "strictly construed against removal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988). "Where doubt regarding the right to removal exists, a case should be remanded to state court." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). In the context of removal under § 205, however, the Ninth Circuit has emphasized that the plain language of § 205 "provides federal courts with remarkably broad removal authority." *Infuturia*, 631 F.3d 1133, 1138 n.5 (9th Cir. 2011).

The parties highlight the tension between case law regarding strict views of general removal statutes and the uniquely broad view of removal under § 205. Notably, New Materials concludes that under § 205, removal is "presumed" (Dkt. 30 at 12) (arguing that "under controlling

precedent, removal is not only proper—but presumed"). While New Materials does not cite any authority for this proposition, New Materials cites *Infuturia* and *Jones Day* throughout its briefing to argue that the "relates to" phrase in § 205 should be read as an expansive basis for removal, including any case that "could conceivably affect" the arbitration's outcome (Dkt. 30 at 7-9, 11).

The Ninth Circuit in *Infuturia* recognized the general practice of construing removal statutes strictly while recognizing that removal authority under § 205 is broad. *Infuturia,* 631 F.3d at 1138 n.5. Notwithstanding the breadth of § 205 removal, district courts citing *Infuturia* have continued to place the burden on the removing party to establish federal jurisdiction. *See, e.g.*, *Mullis*, 2024 WL 5004528, at *2 ("Despite the broad removal authority under Section 205, the removing party continues to bear the burden of establishing federal jurisdiction.") (cleaned up); *Freaner*, 2011 WL 5596919, at *2 ("'[T]he plain language of § 205 provides federal courts with remarkably broad removal authority' . . . . Nevertheless, the removing party continues to bear the burden of establishing federal jurisdiction.") (citing *Infuturia*, 631 F.3d at 1138 n.5). Accordingly, the Court recognizes that § 205's basis for removal is "broad" but declines to find federal jurisdiction here is presumed.

### e.    Federalism Concerns

Though not a dispositive issue, federalism concerns "animate" how courts construe federal removal statutes. *See Beiser*, 284 F.3d at 674 ("Federalism concerns animate the rule requiring strict construction of removal statutes."). Unique considerations apply to removal under § 205 because Congress conferred broad removal jurisdiction. *Id.* In *Beiser*, the Fifth Circuit summarized federalism concerns in the context of § 205 removal—

> [Section] 205 will rarely permanently deprive a state court of the power to decide claims properly brought before it. The district court will ordinarily remand those cases that turn out not to be subject to arbitration, such that the state court will be able to resolve the merits of the dispute. Section 205 therefore raises fewer federalism problems than the general removal statute, § 1441, except in arbitrable cases, it will ordinarily permit state courts to resolve the ultimate issues in a case.

*Id.* at 675. The Court therefore considers whether the Defendants' removal under § 205 "wrongly deprives" the state court of its power to decide Chenco's case, which may contravene broader federalism principles. *Id.*

Raising its own federalism concerns, New Energy argues that remanding this case would "result in inconsistent rulings between the State Court and the Federal Court" (Dkt. 32 at 9). New Energy cites the possibility that New Materials could file a new action in federal court and seek to have the Chinese secondary judgment recognized in federal court while Chenco's state action continued (*id.*). As a preliminary issue, the Court takes issue with New Energy's presumption that New Materials would file an action in federal court, as well as its implied presumption that New Materials could establish jurisdiction in federal court despite all parties being foreign and no apparent federal claim. Further, the Court notes that New Energy's main arguments for removal invoke issues that the state courts already addressed (*see, e.g.*, Dkt. 12-2 at 7 (declining New Energy's alter ego and derivative claim arguments); Dkt. 15-23 at 5, 17 (declining addressing the applicable statute of limitations; Dkt. 15-23 at 18 (declining New Energy's due process arguments)).

New Materials does not specifically address issues of federalism, though its arguments raise broader concerns. New Materials challenges the unfavorable rulings of the state district court, suggesting this was a factor in its decision to remove (Dkt. 30 at 4) (questioning the Idaho state

court's denial of its motion to dismiss, "fail[ure] to meaningfully address Chenco's alter ego theory," and "allow[ing] the case to move forward based solely on Chenco's assertions"). Chenco argues these criticisms show "it is clear [New Materials] intends to ask this Court to reach a different conclusion based on the same arguments already rightly rejected by the state court" (Dkt. 31 at 3 n.2). Chenco argues that should this Court entertain those requests, it would run afoul of federalism principles, violate the law of the case doctrine, and undermine judicial economy (*id*.).

Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction over a case if the exercise of jurisdiction would result in the reversal or modification of a state court decision. *Carmona v. Carmona*, 603 F.3d 1041 (9th Cir. 2010) (citing *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). In other words, the doctrine bars suits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 1050 (quoting *Exxon Mobil Corp. v. Saudi Basic Indust. Corp*., 544 U.S. 280, 284 (2005)).

Defendants' arguments do little to assuage concerns regarding relitigating arguments that the state courts have already rejected. As the Court addressed in the context of New Energy's defenses, it would be improper for this Court to allow New Energy to relitigate past defenses that were unsuccessful at the state district court or Idaho Supreme Court. Doing so risks turning this Court into a state court appellate mechanism, which is contrary to the *Rooker-Feldman* doctrine. The Court will not forecast what arguments Defendants may raise in this Court, though it acknowledges the Defendants have already used this forum to reassert the same questions they previously raised in state court regarding alter ego, "derivative" claims, statute of limitations, and

due process. While federalism concerns are not a dispositive issue under § 205, the Defendants'

arguments—particularly their challenges to the state courts' rulings—weigh against removal here.

### f.    Waiver Under § 205

In its motion for remand, Chenco argues New Energy waived its right to remove by

engaging in "extensive litigation conduct" before seeking removal under § 205 (Dkt. 24-1 at 13).

Chenco explains that because New Energy filed two motions to dismiss and two motions for

summary judgment in state district court before filing its first notice of removal, it waived any

right to remove (*id.* at 14). Chenco contends that by waiving its removal, New Energy's waiver

defeats the general rule requiring all removing parties to consent to removal (*id.* at 13) (citing *Petry*

*v. Versabar, Inc.*, 744 F. Supp. 3d 742, 747 (S.D. Tex. Aug. 9, 2024)). New Energy responds that

"the plain language of § 205" dispenses with any possibility of waiver because the statute provides

for removal "at any time before trial" (Dkt. 32 at 14) (citing *China N. Indus. Tianjin Corp. v.*

*Grand Field Co. Inc.*, 197 F. App'x 543, 544 (9th Cir. 2006)) ("There is no question that Grand

Field had the right to remove this action at any time before trial under the New York Convention.").

Chenco does not address this issue in its reply brief. The Court need not resolve whether

New Energy waived any right to remove under § 205, however, because all the above-mentioned

factors indicate remand is proper. Accordingly, the Court declines to rule on whether waiver is an

independent basis for remanding this case.

### 2.    Subject Matter Jurisdiction Under § 203

"It is well-settled that removal jurisdiction is distinct from subject matter jurisdiction."

*Bearden v. PNS Stores, Inc.*, 894 F. Supp. 1418, 1423 (D. Nev. 1995). The FAA distinguishes

between *subject matter* jurisdiction and *removal* jurisdiction. *Compare* 9 U.S.C. § 203 (addressing

"original jurisdiction") *with* 9 U.S.C. § 205 (addressing "removal of cases from State courts"). Section 203 provides "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." In contrast to § 205's "relates to" language regarding removal, § 203 requires an action to "fall[] under" the Convention to establish subject matter jurisdiction.

The Ninth Circuit has not specifically addressed whether Section 205 alone confers subject matter jurisdiction. *See, e.g.*, *Infuturia*, 631 F.3d at 1136-37 ("Because we conclude the district court had diversity jurisdiction, we do not reach the other contended bases for subject matter jurisdiction under §§ 203 and 205."). Other circuit and district courts have concluded § 205 does not independently confer subject matter jurisdiction. *See Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (holding that "the FAA does not independently confer subject matter jurisdiction," but instead "provides federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the Convention."); *Miller v. Oscar Gruss & Son, Inc.*, No. 24-CV-00239 (MMG), 2025 WL 1733258, at *4 (S.D.N.Y. June 23, 2025) (explaining removal statutes, including § 205, are not sufficient to confer jurisdiction) (citing *Orange Cnty. Water Dist. v. Unocal Corp.*, 584 F.3d 43, 49 (2d Cir. 2009)) (explaining "the removal statute is not the source of subject matter jurisdiction"); *Landbridge Port Servs. (Hong Kong) Ltd v. Notarc Port Inv. LLC*, No. CV 24-254-GBW, 2024 WL 1299685, at *3 (D. Del. Mar. 27, 2024) ("This Court finds the Second Circuit's position that § 205 does not independently confer jurisdiction more persuasive."). Conversely, the Fifth Circuit has concluded

§ 205 does confer subject matter jurisdiction. *See Beiser*, 284 F. 3d at 670 ("Section 205 confers a form of federal question jurisdiction.").

Here, New Materials' notice of removal cites to § 203 to explain the matter "arises under the laws of the United States" (Dkt. 20 at 4). New Energy likewise cites § 203 and states, "[t]his notice is based on federal questions including relevant treaties" (Dkt. 18 at 2-3).[4] Outside of passing references to § 203, neither New Materials nor New Energy discusses how they have subject matter jurisdiction under § 203, or whether they believe § 205 independently confers subject matter jurisdiction.

As outlined above in the context of removal jurisdiction, the Court has already concluded that Chenco's action to enforce the U.K. Judgments does not "relate to" the Convention. *See* 9 U.S.C. §§ 203, 205. Thus, even if the Court were to liberally construe § 203's "arise under" to be as broad as § 205's "relates to" phrase or were to adopt the Fifth Circuit's understanding that § 205 is a form of federal question jurisdiction, the Defendants have not established that this Court has subject matter jurisdiction over the instant case. Accordingly, the Court remands this case for lack of subject matter jurisdiction.

**E.    Li Siblings' Pending Motion to Dismiss**

A district court may exercise its discretion in delegating pending questions of personal jurisdiction to the state court following remand. *Cerner*, 939 F.3d at 1014 ("We do not reach the

---

[4]    New Energy initially cited diversity jurisdiction as a basis for removal before filing an amended notice of removal (Dkt. 1 at 2). This case involves foreign entities or persons on both sides of the suit, which destroys diversity jurisdiction. *See* 28 U.S. Code § 1332; *Hodgson v. Bowerbank*, 9 U.S. 303 (1809); *Mossman v. Higginson*, 4 U.S. 12 (1800). Accordingly, diversity jurisdiction would not provide an independent basis for subject matter jurisdiction in this case.

issue of personal jurisdiction and leave that issue for the state court following remand.") (internal citations omitted); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999) (explaining a district court will conclude that "federalism concerns tip the scales in favor of initially ruling on the motion to remand" when faced with complex challenges to personal jurisdiction) (internal citations omitted).

Here, counsel for the Li Siblings filed a motion to dismiss for lack of personal jurisdiction (Dkt. 17-1 at 4-5). They argue Chenco "seems to be relying on [the Li Siblings'] titles in the companies despite failing to present an alter-ego theory of veil-piercing claim" (*id.* at 6). They further invoke due process arguments regarding their burden of "travel and accommodation, translation service, and loss of earnings from absence of work" (*id.* at 7). These arguments invoke complex issues of state law, which the parties have yet to fully brief because of the Court's stay of the parties' deadlines (Dkt. 23). Accordingly, the Court will not reach the issue of personal jurisdiction and will leave that issue for the state district court following remand. *See Cerner*, 939 F.3d at 1014.

## IV.    ORDER

**IT IS ORDERED that:**

1.    Defendant Do-Flouride New Materials Co., Ltd.'s Motion for Leave of Court to File Sur-reply in Opposition to Plaintiff's Motion to Remand (Dkt. 34) is **DENIED.**

2.    Chenco Engineering & Consulting GMBH's Motion to Remand (Dkt. 24) is **GRANTED**. This case is **REMANDED** back to the District Court of the First Judicial District of the State of Idaho, in Kootenai County.

3.      The Clerk of the Court shall mail a certified copy of this order to the clerk for the District Court of the First Judicial District of the State of Idaho, in Kootenai County. *See* 28 U.S.C. § 1447(c) ("A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.").

DATED: August 22, 2025

Amanda K. Brailsford
U.S. District Court Judge